DAVID J. HENNESSY *vs.* CITY OF ST. PAUL *et al.*

Argued July 14, 1893.   Affirmed July 20, 1893.

| 54 | 219 |
| 64 | 414 |
| 54 | 219 |
| 75 | 227 |
| 54 | 219 |
| 77 | 397 |

**Judgments for Assessments.**

Judgments for assessments for local improvements under the charter of the city of St. Paul stand upon the same footing generally as other judgments of the District Court, and are valid if the court had jurisdiction of the subject-matter of the assessment and of the person of the owner of the property; and all matters which might have been interposed as objections to the application for judgment are *res adjudicata*.

**Same—Collateral Impeachment of.**

Such a judgment cannot be impeached in a collateral action by showing *dehors* the record that the clerk entered the judgment in the records of the court without direction or authority from the court.

**Interest on Delinquent Taxes.**

The provision of the city charter authorizing the recovery of twelve per cent. interest on all assessments not paid within thirty days after publication of notice by the city treasurer that he has received the warrant for collection is valid.

Ultra Vires.

> The objection that an executed purchase of property by a national bank was *ultra vires* can only be urged by the government of the United States. *Merchants' Nat. Bank* v. *Hanson*, 33 Minn. 40, followed.

Appeal by plaintiff, David J. Hennessy, from an order of the District Court of Ramsey County, *Jno. W. Willis*, J., made March 25, 1893, denying his motion for a new trial.

The plaintiff owned lot twelve (12) in block twelve (12) in St. Paul proper. The city laid out and opened an alley ten feet wide through the block from Fifth to Sixth Street. The Board of Public Works made, and on December 11, 1885, confirmed, an assessment against lot twelve of $2,600 for benefits. This assessment was not paid, and the City Treasurer made application in the District Court for judgment against the lot. It was granted, but in September, 1886, the court allowed Hennessy to appear and file objections. On October 1, 1888, final judgment was entered in favor of the city and against the lot for the assessment, interest and costs, amounting to $3,433.35. The lot was sold January 17, 1889, to pay the judgment, and was bid in by the city for $3,450, and it received a certificate of the sale. On January 31, 1889, the city sold and assigned the certificate to Geo. L. Bigelow, and he on the same day sold and assigned it to the defendant, the Merchants' National Bank of St. Paul.

This action was commenced in August, 1892, against the city and the bank, to determine the adverse claims of either or both. The issues were tried and findings filed January 26, 1893. The court found that the certificate of sale was a valid first lien upon the lot, and ordered judgment accordingly.

*Edmund S. Durment*, for appellant.

*Davis, Kellogg & Severance*, for respondents.

MITCHELL, J. This is the ordinary statutory action to determine an adverse claim to real estate. The claim set up in the answers is under a sale of the property under a judgment in favor of the defendant city against the land for an assessment for benefits from laying out and opening an alley contiguous to the property. In his reply the plaintiff assails both the judgment and the sale under it. The consideration of the case is much simplified from the

fact that the attack on the judgment is collateral, and hence can only succeed on the ground that the court rendering the judgment was without jurisdiction of the subject-matter or of the plaintiff, the owner of the land. The assessment was made in 1885, and judgment for the amount in favor of the city rendered in February, 1886. In September, 1886, the plaintiff applied to the court to have the judgment vacated, and for leave to file objections to the city's application for judgment, which leave was granted. The plaintiff thereupon appeared and filed his objections. In September, 1888, judgment was again entered in favor of the city, reciting, among other things, that plaintiff's objections to the entry of judgment had been overruled, and adjudging that the city have judgment against the property for the amount of the assessment, interest, and costs. It was on this judgment that the property was sold and bid in by the city, which subsequently assigned the certificate of sale to one Bigelow, who in turn assigned it to the defendant bank. It is not questioned—in fact, it was admitted on the trial—that the court had jurisdiction to enter the first judgment, so that, however erroneous, it was valid. This being so, it is impossible for us to understand how the court lost jurisdiction to render the second judgment. Counsel claims that it was in an independent proceeding. If he means by this that there were two different and separate proceedings instituted to obtain judgment for this assessment, the record refutes the claim, for it is apparent that there was but one. If, on the other hand, he means that, by the action of the court reopening the case and allowing plaintiff to come in and defend, all proceedings had in the matter prior to judgment, such as filing the assessment warrant and treasurer's report, and giving notice of the application for judgment, were set aside, and had to be repeated, counsel is clearly mistaken in his view of the law. As well might it be claimed that, where a party, after default in a civil action, is allowed to come in and answer, the plaintiff has to commence the action over again by service of the summons.

It is further claimed that the order referred to did not vacate the first judgment, and therefore the court had no jurisdiction to render the second. Assuming counsel's premise to be true, the entry of a second judgment would be at most a mere irregularity.

It is further claimed that the court erred in refusing to allow plaintiff to prove *dehors* the record that the court never had overruled his objections or rendered judgment, but that the clerk entered judgment without any order or authority from the court. Very clearly the judgment could not be impeached and contradicted in this collateral manner. In any collateral proceeding it must be conclusively presumed that every entry made in the records of the court is a statement of the action of the court, and was made by its direction and authority. If the facts were as plaintiff asserts, his remedy was by motion in the original proceedings to have the record corrected. Plaintiff appears to misapprehend the footing upon which judgments for assessments for local improvements under the city charter stand, and to have mistaken his remedy. These judgments stand upon the same footing as any other judgments of the district court, with such distinctions only as are created by the statute, and when it appears that the court had jurisdiction of the subject-matter of the assessment, and had acquired jurisdiction of the person of the owner either by the constructive notice prescribed by the charter or by his voluntary appearance in the proceedings, the judgment is valid, and any defense which the landowner has against the assessment on account of errors or irregularities in making the same or in the proceeding upon which it is based is *res adjudicta*. *Dousman* v. *City of St. Paul*, 23 Minn. 394; *Albrecht* v. *City of St. Paul*, 47 Minn. 531, (50 N. W. Rep. 608.)

Exception is taken to the validity of the provision of the city charter which provides for the recovery of twelve per cent. interest on assessments for benefits, remaining unpaid thirty days after publication of notice by the city treasurer that he has received the warrant for collection, while it provides for the payment of only seven per cent. interest to those to whom damages are awarded. It is claimed that in this way the city is permitted to collect from the property benefited an amount in excess of the cost of the improvement. There is nothing in this point. The damages awarded to those whose property is taken may be, and usually are, only a part of the cost of the improvement. The interest allowed on delinquent assessments for benefits may be intended in part to reimburse the city for the expense of enforcing their collection

and in part as a penalty to insure prompt payment. Whether designed to effect either or both of these purposes, we see nothing in the provision in conflict with the constitution. Art. 9, § 1.

The last point made is that the defendant bank, being a national bank, had no authority to purchase this certificate. It is well settled that no one but the government can raise this question,—*Merchants' Nat. Bank* v. *Hanson*, 33 Minn. 40, (21 N. W. Rep. 849;) *National Bank* v. *Matthews*, 98 U. S. 621; *National Bank* v. *Whitney*, 103 U. S. 99; *Fortier* v. *New Orleans Bank*, 112 U. S. 451, (5 Sup. Ct. Rep. 234;) and, even if the rule were otherwise, the fact that the assignment to the bank might be void would not entitle plaintiff to any relief, for, if the title to the certificate is not in the bank, it must still be in its assignor, Bigelow.

Order affirmed.

(Opinion published 55 N. W. Rep. 1123.)