## LONDON & NORTHWEST AMERICAN MORTGAGE COMPANY
### v. H. GIBSON.

October 5, 1899.

Nos. 11,697—(221).

**City of St. Paul—Local Improvements—Testing Validity of Sale—Statute of Limitations.**

Sp. Laws 1889, c. 32, § 50, relating to sale of real property situate in the city of St. Paul for nonpayment of assessments for local improvements, provides that "no sale shall be set aside, or held invalid, * * * unless the action in which the validity of the sale shall be called in question, be brought, or the defense alleging its invalidity be interposed within three (3) years after the date of the sale." *Held*, that the limitation contained in Sp. Laws 1889, c. 32, § 50, applies to actions brought to set aside the sale of real property in the city of St. Paul for the nonpayment of assessments for local improvements. But as the defendant did not rest on this statute, but, by counterclaim, claimed and obtained an adjudication on the merits that he was the owner of the property under a deed issued on such a sale, the validity of the deed under which the defendant obtained this judgment is involved, and must be determined on the merits.

**"De Minimis."**

The maxim, "De minimis non curat lex," applied to a tax sale.

**Publication of Notice of Sale.**

Publication of a notice of tax sale is not invalid because such notice is embraced in an advertisement with other judgment notices of the tax sale of different lots for nonpayment of delinquent taxes.

**Case Distinguished.**

Security Trust Co. v. Von Heyderstaedt, 64 Minn. 409, distinguished.

Action in the district court for Ramsey county to determine adverse claims to land. The case was tried before Otis, J., who found in favor of defendant; and from an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*W. H. Yardley* and *Oscar Hallam*, for appellant.

*James E. Markham* and *Franklin H. Griggs*, in behalf of city of St. Paul.

BUCK, J.

This action was brought to determine adverse claims to lots 10, 11, and 12 in block 37, West St. Paul Real-Estate & Improvement Syndicate, No. 2, according to a plat thereof on file in the office of the register of deeds of Ramsey county; the plaintiff claiming to be the owner in fee of said lots, which lots are, and for a long period have been, vacant and unoccupied. This claim is denied by the defendant, and he claims to be the owner in fee of said lots, and bases his ownership to said lots upon a certain deed of conveyance from the city of St. Paul, dated March 13, 1897; and he alleges that certain recitals in his deed are true, and makes said deed a part of his answer. He also alleges in said answer that, if the plaintiff had any cause of action against him, it is barred by the statute of limitations, as it was not commenced within three years after the sale of said premises. In its reply the plaintiff admits the execution of said deed by the city of St. Paul to defendant, and its recording in Ramsey county, but alleges that said deed is void and of no effect because of divers irregularities and violations of law in the proceedings under which the same was issued.

There is no question but that the deed was issued pursuant to what is claimed by the defendant to have been a sale of the premises to pay a local assessment for the grading of Stickney street, in the city of St. Paul, Ramsey county, in this state, under a judgment directing such sale. It is admitted that the deed set out in the defendant's answer is the one upon which he relies for his title. Numerous points are suggested by the plaintiff's counsel, going to the irregularities and invalidity of the sale, which it is claimed rendered it and the deed in question invalid. The trial court, as a legal conclusion from the facts found, held that the plaintiff was not entitled to any relief, and that the defendant was entitled to judgment establishing his title to the premises; and from an order denying plaintiff's motion for a new trial it appeals to this court.

The defendant raises the question that the action was not seasonably brought. Laws 1887, c. 60, § 3, provides that

"An action to set aside and cancel such sale may be commenced at any time."

This refers to certain sales made under the general tax laws of the state, and is the last clause of section 1594, G. S. 1894. But the legislature, by special laws of 1889 (chapter 32, § 50), provided that

"No sale shall be set aside, or held invalid, * * * unless the action in which the validity of the sale shall be called in question, be brought, or the defense alleging its invalidity be interposed within three (3) years after the date of the sale."

We find no other law bearing upon this question of limiting the time in which actions of this character must be brought. The sale of the lots in question under the judgment above referred to took place February 23, 1892, and this action was brought in December, 1897, nearly six years after the sale. It is to be noted that the special law of 1889 fixing the time within which suits must be brought to test the invalidity of a sale made for nonpayment of the amount due on assessments for local improvement was passed two years subsequent to the law authorizing suits to be brought at any time to set aside and cancel a sale made under the general tax law of the state.

An examination of the charter of the city of St. Paul leads to the conclusion that there is much reason why such action to test the invalidity of the sale should be brought within three years from the date of the sale. A party owning such property has five years from the date of sale in which to redeem the same, and, if a third party purchases the property at such sale, it is a sound policy which requires that the action to test the invalidity of the sale be brought and determined before the time for redemption expires, in order that the purchaser may know whether he is to have a valid deed or not, and also that the owner of the premises may know whether the sale is valid, in order that he may determine whether he is compelled to redeem from a valid sale, or may lawfully resist redemption from an invalid one. In Bower v. O'Donnall, 29 Minn. 135, 12 N. W. 352, it was held that an action brought in 1881 to set aside or test the validity of an actual tax sale made in 1875 upon an actual tax judgment is barred by the five years limitation provided in Laws 1875, c. 5, § 30, by which the time of bringing such action is controlled. We are of the opinion that the special law of 1889 (chapter 32, § 50) controls this case; that the action of the

plaintiff was not seasonably brought, and is barred by the provisions of said special law.

The rule applies to this particular remedy sought to be enforced herein, but not to the property itself, under the doctrine laid down in Baker v. Kelley, 11 Minn. 358 (480).   And the defendant, evidently having in mind and relying upon the rule laid down in that case, does not merely rest on the defensive, by pleading the statute of limitations as a bar to the remedy herein sought by the plaintiff, but sets up a counterclaim alleging title in himself by virtue of the tax deed, and asks that the title be adjudged in him, and this relief the court granted; hence this case must be determined upon its merits, and involves an adjudication of the validity of the tax deed under which the defendant, Gibson, claims title to the lots in question.   The court appears to have had jurisdiction of the subject-matter and of the parties; and as the judgment stands upon the same footing as other judgments of the district court, controlled only by such distinctions as are created by statute, all points raised as to proceedings prior to the entry of judgment must be deemed as a collateral attack upon the judgment, hence we need not consider them.   Hennessy v. City of St. Paul, 54 Minn. 219, 55 N. W. 1123.

It is claimed that the notice of sale was void because notices of other sales under 25 different judgments were embraced in one advertisement.   Upon this branch of the case the city charter provides that the said advertisement so to be published in each case of a judgment upon any collection warrant and report as aforesaid shall contain a list of the delinquent lots and parcels of land to be sold; the names of the owners, if known; the amount of judgment rendered thereon, respectively, and the warrant upon which the same was rendered; the court which pronounced the judgment; and a notice that the same will be exposed to public sale at a time and place to be named in said advertisement.   Upon an examination of the notice of sale appearing in the paper book, we find that it conforms to this requirement of the city charter.   Such a notice is ample, and not misleading or injurious to the owner of the lots, as well as a great saving of expense.

It is also claimed that the sale was made for less than the amount of the judgment, with costs and interest to the day of sale.   The

judgment was rendered January 30, 1892, for $628.03; interest to time of sale is stated to be $4.19; costs to time of sale, 50 cents; total, $632.72. The sale was made February 23, 1892, for $632.72. The error complained of is that the interest claimed ($4.19) upon the judgment from the time of its rendition, January 30, 1892, up to the day of sale, February 23, 1892 (24 days), is less than the amount required by law, and hence that the sale is void; citing Security Trust Co. v. Von Heyderstaedt, 64 Minn. 409, 67 N. W. 219. The real difference between the amount of interest actually due on the judgment at the time of sale and that which was in fact added to it, and for which the property was sold, is 75 cents. Does this difference vitiate the sale?

The difference, when compared with the amount of the judgment, $628.03, seems trivial,—something less than 12 cents on the $100. In the Security Trust Co. v. Von Heyderstaedt case, cited by counsel, the assessment against the lot was $17; the amount of the judgment was $18.46; the judgment, interest, and costs to day of sale, $19.38; the lot was sold at tax sale for $17. It is self-evident that the amount of interest and costs was not added to the amount for which the lot was sold at tax sale. They were entirely omitted, and the lot was sold for the amount of the judgment, not even including any interest or costs, but only for the amount of the original assessment. It is apparent that such a sale could not have been made, based upon any error or mistake in the computation of interest or ascertainment of costs, as each one is entirely omitted, and the officer selling utterly disregarded the law, not for a trivial amount, but, relatively, for a considerable sum, as a simple computation readily shows.

The authorities are somewhat divided upon the question whether the maxim, "De minimis non curat lex" ("the law cares not for small things"), is applicable to tax sales. It is the theory of those who insist that this maxim is not applicable to such sales that taxes are imposed upon the citizen against his will, that such a law should have no favors shown it, that it is the general rule that tax laws are strictly construed, and that this construction is of universal application when the property rights of the citizen are involved, and that especially such rights should not be affected by the application

thereto of such a vague and uncertain maxim.   Finespun theories are sometimes very plausible, and the citizen occasionally resorts to them to avoid the performance of a public as well as a private duty. But such theories must yield to practical common sense and substantial justice.

However, assuming the general rule to be that tax laws must be strictly construed  as to their operation upon those thereby affected, we are not disposed to confine in every case the words and phrases of the statute to their literal and ordinary signification.   Statutes are to be construed so as best to effectuate the intention of those who made them, and such intent should not be defeated by a too strict adherence to the very letter of the law.   While the citizen has a right to invoke the protection of the law when the officers of the state attempt by judicial proceedings to compel him to pay his share in carrying on the governmental functions, it is not very easy to see just why he should be dealt with more liberally than when his own private obligations are being enforced.   It is true that a tax is a burden, but it is a burden imposed for the very lifeblood of the state.   It is an attribute of sovereignty, possessed for the purpose of promoting the public welfare.   And through this power the citizen is protected in his life, liberty, and property.   Why should he, as a laggard, delinquent taxpayer, be treated any more leniently, or be solely exempt from the application of this wise maxim, than he would be when other business relations with his fellow citizens are involved?

In Colman v. Shattuck, 62 N. Y. 348, where the tax collector returned four cents too much, this maxim was applied; and substantially the same rule was applied in Havard v. Day, 62 Miss. 748. Reason and common sense are to be used in tax cases as well as in others, and we should not discard these aids which guide us in other cases, if they operate to the security of the citizens.   1 Blackwell, Tax Tit. § 474.   To hold that such trivial and unintentional mistakes in the computation of interest by a public officer as appears in this case invalidates a tax sale would doubtless lead to endless litigation, possibly to great public loss, without any intrinsic merit in the legal proceedings.   The judgment was entered in favor of the city of St. Paul, and the lot sold for its benefit; and, although it sold

for 75 cents less than the amount due, it does not complain, but asks that the sale be adjudged valid. The plaintiff, as owner of the lot, was not in any way injured by the sale, for it was sold for an amount less than the law required. The judgment was a valid one, rendered by a court of competent jurisdiction, and the tax sale a substantial compliance with the law; and, under the circumstances, we apply the maxim, "De minimis non curat lex."

It is said, however, that in doing so we hold adversely to Security Trust Co. v. Von Heyderstaedt. The facts in that case were different from those in the one at bar. There the difference between the amount of the judgment and the interest and costs which should have been added, and for which the property should have been sold at tax sale, and the actual amount of the tax sale, was substantial and large, as compared with the amount of the judgment. But we do not overrule or modify the decision in that case. The language of the justice writing the opinion was general in its character, and did not involve a consideration of the rule where this maxim could appropriately be applied.

We find no errors in the record, and the order appealed from is affirmed.

CANTY, J.

I concur in the result arrived at in the last part of the opinion, for the reason that while the maxim, "De minimis non curat lex," applies in the case of a tax sale, yet, as tax proceedings are construed strictly against the party claiming under them, the maxim is applied with more strictness and to a more limited extent in such cases than in others.

### On Motion for Reargument.

November 2, 1899.

PER CURIAM.

On motion for reargument, appellant insists that the notice of sale given by the city treasurer was void because it and 24 other notices of sale under 24 other tax judgments were all embraced in one published notice, and that this is prohibited by Sp. Laws 1889, c. 32, subc. 7, tit. 1, § 30, which reads as follows:

"Two (2) or more of the notices required or authorized by this act to be given by the board of public works or the city clerk, by publication in the official paper of the city, in any special assessment proceedings, may be comprised in one (1) advertisement. Provided, however, such notices are of the same general character, or for like object. And, provided, that in other respects the notice so published shall sufficiently comply with the essential statutory requirements. And the provisions of this section shall extend to, and embrace all notices required to be given in the official paper of the city, by the city treasurer, or the delivery to him of all special assessment warrants for collection, and of his intended application to some court of general jurisdiction for judgment thereon provided for by this chapter."

It will be observed that while this section provides that all notices to be given by the board of public works and city clerk, and notices of the receipt by the city treasurer of assessment warrants, may be given as in that section prescribed, it does not provide that other notices to be given by the treasurer (amongst them, notices of sale under tax judgments) may be so embraced in one published notice.

Appellant contends that the rule, "The expression of one thing is the exclusion of another," should be applied here, and it should be held that this section impliedly prohibits the giving of other notices in that manner. We cannot so hold. The substance of this section of the charter of St. Paul has existed from an early date. We have traced it back as far as 1874, but did not look further. See section 30, p. 64, Sp. Laws 1874. Other portions of the city charter have since been many times amended so as to provide for the publication of many notices for which no provision existed in the charter at or prior to that date. This section 30 has since been amended a few times, but not enough to cover all of the different notices required by other portions of the charter to be published. In fact, the whole charter is largely made up of patchwork. Under these circumstances, we cannot apply the rule of interpretation contended for by appellant; but must hold that the notice here in question was properly published, notwithstanding the peculiar provisions of the section.

Motion for a reargument denied.